# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WASHINGTON

### AT SEATTLE

| | |
|---|---|
| **SCOTT E. STAFNE**, | Case No. 2:17-cv-01692-MHS |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **THOMAS S. ZILLY,**<br>**JOHN C. COUGHENOUR,**<br>**BARRY G. SILVERMAN, and**<br>**TY TRENARY**, | |
| Defendants. | |

Scott E. Stafne, STAFNE TRUMBULL LLC, 239 North Olympic Avenue, Arlington, WA 98223. *Pro se*.

Jared D. Hager, Special Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97202. Of Attorneys for Defendants Thomas S. Zilly, John C. Coughenour, and Barry G. Silverman.

Geoffrey A. Enns, SNOHOMISH COUNTY PROSECUTING ATTORNEY, CIVIL DIVISION, 3000 Rockefeller Avenue, M/S 504, Everett, WA 98201. Of Attorneys for Defendant Ty Trenary.

**Michael H. Simon, District Judge.**

Plaintiff Scott E. Stafne ("Stafne") is an attorney in the State of Washington. He brings this action on his own behalf. Stafne asserts claims against three senior federal judges and a

county sheriff.[1] Before Stafne filed this lawsuit, each Federal Judge Defendant had elected what is known as "senior status" under 28 U.S.C. § 371(b)(1).[2] In this lawsuit, Stafne challenges the constitutionality of that statute under the Appointments Clause of the U.S. Constitution.[3]

Stafne argues that after the Federal Judge Defendants elected senior status, they became mere "judicial volunteers," who cannot lawfully exercise federal jurisdiction over Stafne, or any litigant whom Stafne represents, without the express consent of all parties in any particular lawsuit. Stafne also alleges that the Federal Judge Defendants have erroneously concluded in other cases that the court in those cases had subject matter jurisdiction over the dispute and made other errors. In the lawsuit now before this Court, Stafne seeks various forms of relief against the Federal Judge Defendants, including: (1) a declaration that any orders issued by the Federal Judge Defendants in other cases are void; (2) an injunction requiring the Federal Judge Defendants to withdraw from continuing to preside over or hear any case in which Stafne is a

---

[1] The Defendants are (1) the Honorable Barry G. Silverman, Senior Circuit Judge for the U.S. Court of Appeals for the Ninth Circuit; (2) the Honorable Thomas S. Zilly, Senior U.S. District Judge for the Western District of Washington; (3) the Honorable John C. Coughenour, Senior U.S. District Judge for the Western District of Washington; and (4) Ty Trenary, Sheriff of Snohomish County, Washington. Collectively, the three senior federal judge defendants are referred to as the "Federal Judge Defendants." Stafne sues the Federal Judge Defendants in their individual capacities. Stafne sues Sheriff Trenary in both his individual and official capacities.

[2] That statute provides, in relevant part: "Any justice or judge of the United States appointed to hold office during good behavior *may retain the office but retire from regular active service* after attaining the age and meeting the service requirements, whether continuous or otherwise, of subsection (c) of this section and shall, during the remainder of his or her lifetime, continue to receive the salary of the office if he or she meets the requirements of subsection (e)." 28 U.S.C. § 371(b)(1) (emphasis added).

[3] Under the Appointments Clause, the President "shall nominate, and by and with the advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments." U.S. CONST., art. II, § 2, cl. 2.

lawyer or litigant; and (3) money damages. Against Sheriff Trenary, Stafne seeks declaratory relief, asking the Court to declare the legal consequences if Sheriff Trenary were to comply with a specific order that Judge Zilly previously issued in one of Stafne's cases. The Federal Judge Defendants have moved to dismiss the pending action for lack of subject matter jurisdiction and, alternatively, for failure to state a claim. Sheriff Trenary has moved to dismiss this lawsuit for failure to state a claim.

A person allegedly aggrieved by an order, decision, or judgment in a federal case has several avenues for relief. "Congress has provided carefully structured procedures for taking appeals, including interlocutory appeals, and for petitioning for extraordinary writs in Title 28 of the United States Code." *Mullis v. U.S. Bankr. Ct. for Dis. of Nev.*, 828 F.2d 1385, 1394 (9th Cir. 1987). The collateral attack doctrine directs that challenges to the orders, decisions, or judgments of a court other than through these well-recognized procedures are generally improper, and to allow such collateral attacks would "seriously undercut[] the orderly process of law." *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995). The complementary doctrine of absolute judicial immunity also serves to "discourage[] collateral attacks" and to "help[] to establish appellate procedures as the standard system for correcting judicial error." *Forrester v. White*, 484 U.S. 219, 225 (1988). Stafne currently has two cases before the Federal Judge Defendants. Rather than seek relief for any alleged errors through proper channels in those cases, Stafne filed this lawsuit. Through this action, Stafne attempts an end-run around the carefully-crafted and well-recognized processes designed to protect the rights of all litigants and the orderly administration of law.

Longstanding principles providing for appellate review, finality, and the orderly process of law dictate dismissal of this lawsuit. Much of Stafne's Complaint is merely a collateral attack

on the orders and decisions made by other judges in other cases, which a different judge in a different case is without jurisdiction to hear. This district judge also lacks the authority to grant Stafne the declaratory or injunctive relief that he seeks because doing so would require this Court to issue what is, in effect, a writ of mandamus on a parallel or even superior court. Further, equitable relief is improper when a litigant has an adequate remedy at law. Under the facts alleged, even when viewed in the light most favorable to Stafne, he has an adequate remedy at law through direct appeal or mandamus in the cases in which he or his clients claim to have been injured. That is the proper route for addressing the arguments that Stafne raises in this lawsuit.

In addition, the doctrine of absolute judicial immunity—itself a bulwark against collateral attack—bars Stafne's monetary claims against the Federal Judge Defendants. Judicial immunity is not overcome by Stafne's allegation that the position of "senior federal judge" violates the Appointments Clause of the U.S. Constitution. Finally, Stafne's claims against Defendant Trenary must be dismissed because they constitute a collateral attack on an order of another district court and, to the extent Stafne seeks money damages, that claim is not ripe for review because Sheriff Trenary has not yet executed the court order at issue. Thus, the Court grants with prejudice the motions to dismiss filed by the Federal Judge Defendants and Sheriff Trenary.

## STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). A federal court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under

Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of "subject matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

## B. Motion to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the

plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND[4]

### A. Stafne's Earlier Lawsuits

Stafne is an attorney admitted to practice before the United States District Court for the Western District of Washington, the U.S. Court of Appeals for the Ninth Circuit, and the United States Supreme Court. Stafne has represented clients before the Western District of Washington and the Ninth Circuit and states that he intends to continue to do so. Stafne also has represented himself as a party before the Western District of Washington and the Ninth Circuit and states that he likely will do so again. In addition to his legal practice, Stafne is engaged in educational and political activities, often concerning the American justice system. He also is involved with private legal publishing companies and in the home foreclosure industry.

Stafne currently is a party in two cases pending before the Federal Judge Defendants. The first is *Stafne v. Burnside, et al.*, Case No. 2:16-cv-0753-JCC (W.D. Wash.) ("*Burnside*"). Judge Coughenour presides over the *Burnside* case, in which Stafne alleges claims of unfair debt

---

[4] This section is based on Plaintiff's Complaint and the record in the two other federal cases in which Stafne is a litigant that are discussed below. The Court takes judicial notice of the record in those two cases, as requested by the parties and without objection by any party.

collection and unlawful trade practices. After the stipulated dismissal of one defendant,

Judge Coughenour stayed the *Burnside* lawsuit.

The second case is *Bank of New York Mellon v. Stafne*, Case No. 2:16-cv-0077-TSZ

(W.D. Wash.) ("*BNYM*"). Judge Zilly presides over the *BNYM* case, which is an *in rem* action to

quiet title relating to property that Stafne owns in Snohomish County, Washington. The Bank of

New York Mellon sought to foreclose on Stafne's property based on a 2005 deed of trust. Stafne

moved to dismiss that case for lack of subject matter jurisdiction and asked that Judge Zilly

abstain from deciding the case. Judge Zilly denied Stafne's motion. Stafne appealed that denial,

and the Ninth Circuit dismissed Stafne's appeal on the ground that Judge Zilly's order was not

yet final or otherwise appealable. Judge Zilly granted summary judgment in favor of the Bank of

New York Mellon and entered a partial judgment, judicially foreclosing on Stafne's property.

Stafne appealed that order to the Ninth Circuit. Stafne also moved for an order staying the

district court's order of foreclosure pending appeal.

While this second appeal in *BNYM* was pending, the Bank of New York Mellon moved to

amend its partial judgment to include certain information required under Washington law to

foreclose on real property. Judge Zilly issued an order stating that the district court could not

amend the partial judgment without leave from the Ninth Circuit because Stafne had appealed

the partial judgment and that appeal was still pending. Judge Zilly directed the Bank of New

York Mellon to notify the Ninth Circuit under Rule 12.1 of the Federal Rules of Appellate

Procedure that the district court would grant the motion to amend, if allowed to do so by the

Ninth Circuit. A motions panel of the Ninth Circuit, which included Judge Silverman, remanded

the *BNYM* case to Judge Zilly for the limited purpose of considering the motion to amend the

partial judgment.

After the Ninth Circuit's remand, Plaintiff's brother and a co-defendant in *BNYM*, Todd Stafne, passed away. The district court allowed substitution by Todd Stafne's personal representative. Afterward, Stafne asked Judge Zilly to recuse himself. Stafne argued both that Judge Zilly was not properly appointed as an Article III judge under the Appointments Clause after he took senior status and that Judge Zilly was biased in favor of the law firm representing the Bank of New York Mellon (Davis Wright Tremaine LLP) and against Stafne as a *pro se* litigant. Judge Zilly denied Stafne's request for recusal and referred the motion to the Chief Judge for the Western District of Washington, who affirmed that denial. Stafne filed a motion for reconsideration, which the Chief District Judge again denied. The parties agreed to a continuance of the motion to amend the partial judgment. While the motion to amend was pending, Stafne filed a separate lawsuit, which is the case now before this Court. Based in part on Stafne's filing of this new lawsuit, Judge Zilly stayed the *BNYM* case.

## B.  Stafne's Claims in this Case

Stafne alleges that the American judicial system is biased in favor of parties with significant financial resources and that federal courts unfairly discriminate against *pro se* litigants and attorneys from small, rather than large, law firms. Stafne also alleges that federal courts routinely but improperly render decisions without explaining the bases of their jurisdiction and routinely act without subject matter jurisdiction, particularly in foreclosure disputes. Stafne argues that this practice has injured Stafne, his clients, and others who have litigated or will litigate foreclosure disputes in federal courts within the Ninth Circuit. In his Complaint, Stafne discusses several cases that he contends are examples of this behavior, including several in which Stafne has appeared as an attorney for others. Stafne also alleges that his exercise of free speech and his representation of some clients in foreclosure actions have led to unfair treatment and retaliation by judges in federal courts in the Ninth Circuit.

Stafne also argues that Congress' creation of the position of "senior judge" violates the Appointments Clause of the U.S. Constitution, contained in Article II, § 2. Stafne incorporates by reference a law review article written by David R. Stras and Ryan W. Scott.[5] Stafne argues that for the reasons discussed by Judge Stras and Professor Scott, the Federal Judge Defendants do not validly exercise federal judicial power under Article III. Stafne argues that, as senior judges, the Federal Judge Defendants do not properly hold the office of an Article III Judge, but instead act as mere "judicial volunteers." Stafne adds that although the Western District of Washington has a policy that litigants may consent to a case being heard by a U.S. Magistrate Judge or a U.S. Bankruptcy Judge, there is no similar policy for seeking or requiring consent to a case being heard by a "senior judge." Stafne also asserts that "active judges" in the Western District of Washington do not provide meaningful oversight of the work of senior judges. Finally, Stafne alleges that senior judges are either incompetent based on their age or are biased because they are unpaid for the judicial work that they perform.

With respect to the *BNYM* case specifically, Stafne alleges that the Western District of Washington and the Davis Wright Tremaine law firm "worked together" to arrange for Senior District Judge Zilly to be assigned to that case. Stafne also contends that in presiding over the *BNYM* lawsuit, Judge Zilly acted out of "bias" against Stafne and in favor of Davis Wright Tremaine and large law firms generally. Stafne further alleges that Judge Zilly agreed to hear *BNYM* out of a "desire to retaliate" against Stafne and to impress upon Stafne that homeowners

---

[5] David R. Stras and Ryan W. Scott, *Are Senior Judges Unconstitutional*, 92 CORNELL LAW REVIEW 453 (2007) ("Stras & Scott"). When this article was published in 2007, David Stras was an Associate Professor at the University of Minnesota Law School. From 2010 through 2018, he was an Associate Justice of the Minnesota Supreme Court, and in early 2018 he became a judge on the U.S. Court of Appeals for the Eighth Circuit. Ryan Scott currently is a Professor of Law at the Maurer School of Law Indiana University Bloomington. For a response to the article by Judge Stras and Professor Scott, *see* Hon. Betty Binns Fletcher, *A Response to Stras & Scott's "Are Senior Judges Unconstitutional,"* 92 CORNELL LAW REVIEW 523 (2007).

have no chance of obtaining justice in a foreclosure action. In addition, Stafne asserts that Judge Zilly improperly reached the merits in *BNYM*, failed to "comprehend his duty to not arbitrarily and without explanation invoke jurisdiction an Article III district court does not have," and improperly authorized the foreclosure of Stafne's property, even though some facts that are needed to authorize a foreclosure had not yet been established. Stafne argues that in addition to occupying a position that violates the structural provisions of the U.S. Constitution designed to protect individual liberty, Judge Zilly has denied Stafne due process. Finally, Stafne alleges that actions taken by both Senior District Judge Zilly and Senior Circuit Judge Silverman in *BNYM* caused Todd Stafne, Stafne's brother, to suffer a stress-related heart attack and, ultimately, death.

With respect to the *Burnside* case, Stafne alleges that Senior District Judge Coughenour was required to advise Stafne that Judge Coughenour had agreed to hear the case as a "judicial volunteer." Stafne adds that he had the right to withhold consent to a senior judge presiding over that case and states that he never consented to Judge Coughenour hearing that case.

Stafne requests "whatever relief may be available" to prevent senior judges from hearing cases in which he is a litigant or an attorney or to prevent senior judges from hearing cases without the consent of all parties. Stafne also seeks an order requiring all senior federal judges to explain how and why they have jurisdiction in each case in which their jurisdiction is challenged. Further, in the *BNYM* case, Stafne seeks to have Judge Zilly disqualified from that matter and requests an order be entered in this separate action that declares all of Judge Zilly's previous orders in the *BNYM* case are *ultra vires* on the grounds that they were entered in the absence of subject matter jurisdiction. Stafne also seeks an order in this case disqualifying Senior Ninth Circuit Judge Silverman from continuing to hear the appeal in the *BNYM* case. Stafne also seeks an order in this case directing the Ninth Circuit to rescind its previously-issued order of remand

in the *BNYM* case. Similarly, in the *Burnside* case, Stafne seeks an order in this case directing Judge Coughenour to withdraw from continuing to hear the *Burnside* lawsuit.

Stafne also seeks relief under 42 U.S.C. §§ 1983 and 1985 against Judge Zilly and Judge Silverman, arguing that by purporting to act as federal judges and ordering, or not vacating, a judicial sale of Stafne's real property, Judges Zilly and Silverman deprived Stafne of his constitutional rights. Stafne also alleges that Judges Zilly and Silverman purposefully exercised jurisdiction in a matter in which they lacked subject matter jurisdiction solely to retaliate against Stafne for his criticism of federal courts, in violation of Stafne's rights under the First Amendment. Stafne alleges that these actions have caused him physical, psychological, and financial injury. Finally, Stafne seeks contingent relief against Defendant Trenary, in the event that he were to cause the sale of Stafne's real property under an order issued by Judge Zilly.

## DISCUSSION

### A. Federal Judge Defendants' Motion to Dismiss

The Federal Judge Defendants move to dismiss Stafne's claims on several grounds. Among other things, the Federal Judge Defendants argue that Stafne's claims under 42 U.S.C. §§ 1983 and 1985 are not cognizable against them because they did not act under color of *state* law. The Federal Judge Defendants also argue that Stafne's claims are an improper *collateral attack* on other litigation and, to the extent that Stafne seeks injunctive relief relating to other cases, such equitable relief is unavailable because Stafne has an adequate remedy at law. Further, the Federal Judge Defendants argue that they have absolute judicial immunity against Stafne's claims seeking money damages.

#### 1. Stafne's Claims Under 42 U.S.C. §§ 1983 and 1985

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State or Territory or the District of Columbia*, subjects, or

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983 (emphasis added). Based on this text, § 1983 "only provides a remedy against persons acting under color of *state* law." *Ibrahim v. Dept. of Homeland Security*, 538 F.3d 1250, 1257 (9th Cir. 2008) (emphasis added). Even if the Federal Judge Defendants were acting as mere "judicial volunteers" when they presided over Stafne's cases in federal court, they still were not acting under color of *state* law. Thus, Stafne's claim against the Federal Judge Defendants under § 1983 fails. Further, Stafne's claim against the Federal Judge Defendants under 42 U.S.C. § 1985 fails because, among other reasons, he does allege the requisite racial animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (requiring as an element of a claim under § 1985 "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action").

Even if the Court were to construe Stafne's § 1983 claim against the Federal Judge Defendants as a claim against federal officers under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), that claim would fail as well. In *Bivens*, the Supreme Court recognized a cause of action to sue a federal official in his or her individual capacity for damages caused by a violation of the plaintiff's Fourth Amendment right against unreasonable search and seizure. *Id*. at 396-97. The Supreme Court has extended *Bivens* only twice, first in *Davis v. Passman*, 442 U.S. 228, 248 (1979), and next in *Carlson v. Green*, 446 U.S. 14, 20-25 (1980). In *Davis v. Passman*, the Supreme Court "provided a *Bivens* remedy under the Fifth Amendment's Due Process Clause for gender discrimination." In *Carlson v. Green*, the Supreme Court "expanded *Bivens* under the Eighth Amendment's Cruel and Unusual

Punishments Clause for failure to provide adequate medical treatment to a prisoner." Outside of these two contexts, however, "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018) (quoting *Ziglar v. Abbasi*, --- U.S. ---, 137 S.Ct. 1843, 1857 (2017)). No court has even come close to recognizing a *Bivens* claim under any circumstances resembling those presented by Stafne.

### 2. Collateral Attack Doctrine

#### a. Stafne's Request that This Court Overturn Decisions of Other Courts

In this lawsuit, Stafne seeks, among other things, an order declaring that all of Judge Zilly's orders entered in the *BNYM* lawsuit are void. Stafne also seeks an order directing the Ninth Circuit to rescind its order of remand in the *BNYM* case. Stafne also requests an order that the *BNYM* and *Burnside* cases cannot be used for purposes of either claim preclusion (*res judicata*) or issue preclusion (collateral estoppel) in any lawsuit involving any parties, including lawsuits that have not yet been filed. Under the collateral attack doctrine, all of this relief is unavailable and beyond the jurisdiction of this Court to provide.

"[C]ollateral attacks on the judgments, orders, decrees or decisions of federal courts are improper." *Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1393 (9th Cir. 1987) (citing *Brown v. Baden*, 815 F.2d 575, 576-77 (9th Cir. 1987); *In re Braughton*, 520 F.2d 765, 766 (9th Cir. 1975); *Tanner Motor Livery Ltd. v. Avis, Inc.*, 316 F.2d 804, 810 (9th Cir. 1963)); *see also Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) ("The collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts."). "[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Celotex Corp. v. Edwards*, 514

U.S. 300, 313 (1995) (quoting *Walker v. Birmingham*, 338 U.S. 307, 314 (1967)). By statute, "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . ." 28 U.S.C. § 1291. "Cases in the courts of appeals may be reviewed by the Supreme Court" either "[b]y writ of certiorari" or "[b]y certification at any time by a court of appeals . . ." 28 U.S.C. § 1254. Thus, this Court lacks subject matter jurisdiction (and all other authority) to overturn a decision of the Ninth Circuit or any district court entered in a separate lawsuit. *See Mullis*, 828 F.2d at 1393 n.19 (stating that it is "[n]eedless to say" that "a district court has no . . . authority to 'review' any ruling of a court of appeals."); *Brown v. Baden*, 815 F.2d 575, 576 (9th Cir. 1987) ("Unless we wish anarchy to prevail within the federal judicial system, a precedent of this court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." (quotation marks and alteration omitted)). To do so would "seriously undercut[] the orderly process of law." *Celotex*, 514 U.S. at 313.

### b.  Stafne's Request for Other Equitable Relief

Against the Federal Judge Defendants, Stafne also asks this Court to order injunctive relief in other cases. Although the collateral attack doctrine does not apply when a plaintiff's claims "were never addressed by a prior order or judgment," *Rein*, 270 F.3d at 902, Stafne seeks an order from this Court that would prevent all senior judges from presiding over any case in which Stanfe participates (as either counsel or party) without Stafne's express consent.[6] Stafne also seeks an order requiring all federal judges in all cases to explain why they have subject

---

[6] Stafne's argument that all senior federal judges lack "subject matter jurisdiction" to decide a case *unless all parties consent* is inconsistent with the fundamental and well-established principle that a defect in subject matter jurisdiction can never be waived. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("subject matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived") (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

matter jurisdiction in any case in which it is challenged. Further, Stafne seeks an order removing or disqualifying the Federal Judge Defendants from continuing to hear the *BNYM* and *Burnside* lawsuits. This Court lacks subject matter jurisdiction (and all other authority) to grant this relief.

A court in a separate action, such as this one, lacks jurisdiction to issue what is "in essence . . . a writ of mandamus" to another district court judge or to the Ninth Circuit. *Mullis*, 828 F.2d at 1393 ("A district court lacks authority to issue a writ of mandamus to another district court."). To the extent that Stafne seeks such a writ, the proper vehicle is to seek appropriate relief in the underlying case itself, including on appeal. Allowing "a district court to grant injunctive relief against a . . . district court . . . would be to permit, in effect, a 'horizontal appeal' from one district court to another or even a 'reverse review' of a ruling of the court of appeals by a district court." *Mullis*, 828 F.2d at 1392-93.

Furthermore, Stafne lacks standing to seek the equitable relief that he requests. "Standing is a threshold matter central to [a court's] subject matter jurisdiction." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (explaining that if a plaintiff lacks standing, a district court does not have subject matter jurisdiction to decide the case.); *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002). "[T]he elements of standing . . . must be supported at each stage of litigation," *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (quotation marks omitted), and a plaintiff "must show standing with respect to each form of relief sought." *Ellis*, 657 F.3d at 978.

To establish Article III standing to seek injunctive relief, a plaintiff must "allege either 'continuing, present adverse effects'" of a defendant's past illegal conduct, "or 'a sufficient likelihood that [he] will again be wronged in a similar way." *Villa v. Maricopa Cty.*, 865

F.3d 1224, 1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), and *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). Additionally, standing to seek equitable relief requires "a showing of an inadequate remedy at law and . . . a serious risk of irreparable harm." *Pulliam v. Allen*, 466 U.S. 522, 537 (1984); *see also O'Shea*, 414 U.S. at 499.

In *O'Shea v. Littleton*, the plaintiffs sought injunctive relief against various local officials. *Id*. at 493. The plaintiffs alleged that the defendants had violated and were continuing to violate the plaintiff's constitutional rights by operating the criminal justice system in a discriminatory manner. The Supreme Court first held that the plaintiffs had failed to establish an actual case or controversy because none of them has suffered any injury relating to the defendants' alleged practice of illegal bond-setting, sentencing, and imposing jury fees. *Id*. at 493-95. The Supreme Court also held that even if the plaintiffs had established an existing case or controversy, there still would be no adequate basis for equitable relief because the plaintiffs failed to establish "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *Id*. at 502. If the plaintiffs were, in the future, ever prosecuted and faced trial, or were improperly sentenced, there would be "available state and federal procedures which could provide relief from the wrongful conduct alleged." *Id*. at 502. "Considering the availability of other avenues of relief open to respondents . . . and the abrasive and unmanageable intercession which the injunctive relief they seek would represent," the Supreme Court concluded that, even "apart from the absence of an existing case or controversy presented by respondents for adjudication," the district court should not hear the plaintiffs' claims *Id*. at 504.

Thus, as in *Pulliam* and *O'Shea*, Stafne lacks standing to seek equitable relief because he cannot show that he has an inadequate remedy at law. To the extent that Stafne takes issue with

any judgment, order, decree, or decision in *BNYM*, *Burnside*, or any other case in which he appears, he may seek appellate review in the particular case in which the challenged ruling is entered. On such review, it is possible that Stafne may draw a panel of active Ninth Circuit Judges not joined by a senior judge, and he may choose to present his challenge to the constitutionality of 28 U.S.C. § 371 at that time. If unsuccessful, Stafne may seek *en banc* appellate review. Finally, if still unsuccessful, Stafne may petition the United States Supreme Court, which sits without any senior judges, for a writ of *certiorari*. These are all remedies at law, and they are adequate. Stafne, therefore, lacks standing to seek equitable relief.

### 3. Absolute Judicial Immunity

The Federal Judge Defendants also move to dismiss Stafne's claims for money damages based on absolute judicial immunity. Although Stafne does not seek money damages from Judge Coughenour, Stafne does allege that both Judge Zilly and Judge Silverman have caused him harm, and Stafne seeks nominal damages from them.

#### a. Standards

Under well-established principles, "a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (alteration omitted). The Supreme Court has "held that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump*, 435 U.S. at 355-56 (quotation marks omitted). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Thus, "it is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.*; *see also Demoran v. Witt*, 781

F.2d 155, 158 (9th Cir. 1985) ("Allegations of malice or bad faith in the execution of the officer's duties are insufficient to sustain the complaint when the officer possesses absolute judicial immunity."). "Judicial immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (quoting *Cleavinger v. Saxner*, 474 U.S. 193 (1985)). The doctrine of judicial immunity serves to "discourage[e] collateral attacks, and thereby help[s] to establish appellate procedures as the standard system for correcting judicial error." *Forrester v. White*, 484 U.S. 219, 225 (1988).

Judicial "immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (citations omitted).

Regarding the first exception to judicial immunity, whether an action is judicial "relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 12 (alteration omitted). In *Mireles*, an attorney alleged that a judge ordered police officers to carry out a judicial order with excessive force which, the Supreme Court acknowledged, "is not a function normally performed by a judge." *Id.* (quotation marks omitted). The Supreme Court, however, stated that "if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge." *Id.* Thus, "[i]f judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error or was in excess of his authority." *Id.* at 12-13 (alteration

and quotation marks omitted). "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Id.* at 13 (quoting *Stump*, 435 at 362). A court must "look to the particular act's relation to a general function normally performed by a judge." *Id.*

Regarding the second exception to judicial immunity, "[a] clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction." *Mullis*, 828 F.2d at 1389. In *Stump*, the Supreme Court concluded that a judge who, pursuant to state law, had "original exclusive jurisdiction in all cases at law and in equity whatsoever, jurisdiction over the settlement of estates and over guardianships, appellate jurisdiction as conferred by law, and jurisdiction over all other causes, matters and proceedings where exclusive jurisdiction thereof is not conferred by law upon some other court, board or officer," did not act in the clear absence of all jurisdiction in authorizing a woman's sterilization. *Stump*, 435 U.S. at 357 (alteration omitted). The Court also offered the following illustration:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.* at 357 n.7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)). As stated by the Supreme Court in *Stump*, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356.

### b. Application

#### i. Whether the challenged actions are of a kind that are normally performed by a judge

All of the actions of the Federal Judge Defendants about which Stafne complains are actions and functions that are normally performed by a judge. Although Stafne argues that the Federal Judge Defendants did not constitutionally continue to hold federal judicial office after

they elected senior status, Stafne cannot—and does not—dispute that all of the actions taken by

Judge Zilly and Judge Silverman in the *BNYM* case and all of the actions taken by

Judge Coughenour in the *Burnside* case were actions and functions normally performed by a

judge in a lawsuit. These actions included receiving and reviewing legal memoranda and briefs,

hearing oral argument in a courtroom, granting or denying motions, and entering orders or

judgments.

Stafne also argues, at least implicitly, that judicial immunity applies only to "judges" and

after electing senior status the Federal Judge Defendants are no longer judges under Article III,

based on Stafne's Appointments Clause argument. Stafne, however, does not explicitly argue

that the Federal Judge Defendants are not "judges." Indeed, he appears to concede that they can

lawfully decide federal cases provided that all parties consent. Stafne, thus, is not arguing that

the Federal Judge Defendants are not judges for purposes of judicial immunity, only that they no

longer hold authority under Article III. Accordingly, the actions about which Stanfe complains

were all judicial acts, and the first exception to judicial immunity does not apply.

### ii. Whether there was a clear lack of all subject matter jurisdiction

The second exception is when there was a "clear lack" of all subject matter jurisdiction.

Stafne's argument on this point takes two forms. First, Stafne argues that Judge Zilly and

Judge Silverman lacked subject matter jurisdiction specifically in the *BNYM* lawsuit because the

requirements for diversity jurisdiction, upon which the Bank of New York Mellon asserted

subject matter jurisdiction, were not met. Second, Stafne argues that all of the Federal Judge

Defendants acted without subject matter jurisdiction because, as senior judges, they did not

constitutionally continue to hold federal judicial office after electing senior status, at least without the consent of all parties.[7]

According to Stafne, Judge Zilly acted in the absence of subject matter jurisdiction in *BNYM* because the plaintiff, the Bank of New York Mellon, failed to plead sufficient facts to invoke the district court's diversity jurisdiction under 28 U.S.C. § 1332. Stafne argued before Judge Zilly that the Bank of New York Mellon did not allege the specific State in which it had its principal office. In its complaint, the Bank of New York Mellon alleged that it was a corporation. Thus, for purposes of diversity jurisdiction, it is a citizen of both its State of incorporation and the State in which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). The Bank of New York Mellon also alleged in its complaint that it was a Delaware corporation with its principal place of business and headquarters in New York. Thus, for purposes of Stafne's lawsuit before the undersigned, Stafne's argument appears to be without merit, although that issue is more properly resolved in the *BNYM* lawsuit, including any appeal of that case.

Stafne also argued that the complaint filed by the Bank of New York Mellon failed to establish that it was the real party in interest, thus raising the issue of whether a different party's citizenship should be considered for purposes of diversity jurisdiction. Stafne also argued in *BNYM* that the court lacked subject matter jurisdiction under the "prior exclusive jurisdiction" doctrine. Stafne also raised other challenges to the court's jurisdiction, including that the Bank of New York Mellon lacked standing and authority to bring the lawsuit. Judge Zilly heard and rejected all of these arguments, and Stafne may raise them in his appeal of that case. Stafne, however, has not shown a "clear lack" of subject matter jurisdiction.

---

[7] Again, Stafne's argument that full consent by the parties would have conferred subject matter jurisdiction is at odds with long-established precedent holding that a lack of subject matter jurisdiction can never be waived. *See* n.6, *supra*.

For judicial immunity to be pierced, the challenged conduct must be "manifestly or palpably beyond the judge's authority." *Bud Antle, Inc. v. Barbosa*, 106 F.3d 406 (9th Cir. 1996) (quoting *Spalding v. Vilas*, 161 U.S. 483, 498 (1896) (alteration omitted)). In *Bud Antle, Inc.*, the Ninth Circuit held that although it had determined that an adjudicative body lacked jurisdiction to hear a dispute, there was no reason to conclude that "the Board members should not be immune from damages suits." *Id.* The Board's "erroneous assertion of jurisdiction was not so grave as to warrant piercing the Board members' immunity" and "allegations of bad faith do not compel" a different result. *Id.* In the *BNYM* case, a review of the record similarly shows no basis to conclude that Judge Zilly acted in the complete absence of all subject matter jurisdiction that was manifestly or palpably beyond the judge's authority.

With regard to Judge Silverman, Stafne merely argues that Judge Silverman remanded Judge Zilly's order without having first determined that the Ninth Circuit had jurisdiction over that appeal, which Stafne challenged by motion. Thus, Stafne does not argue that the Ninth Circuit had a "clear lack" of jurisdiction over the appeal, only that the appellate court did not determine (or expressly explain) the basis of its jurisdiction. In any event, "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." 28 U.S.C. § 1291. Thus, Judge Silverman, sitting on a panel of the Ninth Circuit hearing an appeal from a final decision of a district court, did not act in the absence of all jurisdiction in entering an order of limited remand to Judge Zilly in *BNYM*.

The second form of Stafne's argument relates to his constitutional challenge to federal senior status based on the Appointments Clause. Stafne's argument fails for several alternative reasons. First, "[j]urisdiction refers to a *court's* adjudicatory authority. Accordingly, the term jurisdictional properly applies only to prescriptions delineating the classes of *cases* (subject

matter jurisdiction) and the persons (personal jurisdiction) implicating that authority." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-61 (2010) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)) (emphasis added). "[A] court's subject matter jurisdiction defines its power to hear cases." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560 (2017); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (defining subject matter jurisdiction as "the courts' statutory or constitutional power to adjudicate the case" (emphasis omitted)). "Subject matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases," or "cases of a certain genre." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316-17 (2006); *see also United States v. Morton*, 467 U.S. 822, 828 (1984) ("Subject matter jurisdiction defines the court's authority to hear a given type of case . . . .").

Thus, even if Stafne were correct that a federal judge no longer continues to hold constitutional authority under Article III after taking senior status, that would not mean that any *court* issuing rulings or decisions rendered by a senior judge would lack subject matter jurisdiction, as a court. The Supreme Court directs us to look to the jurisdiction of the *court* on which a judge sits, not to the individual qualifications of any specific judge. *See Stump*, 435 U.S. at 357 (citing state code describing jurisdiction of the court); *Bradley v. Fisher*, 80 U.S. 335, 354 (1871) ("The Criminal Court of the District, as a court of general criminal jurisdiction, possessed the power to strike the name of the plaintiff from its rolls as a practicing attorney.").

Second, the Supreme Court has expressly characterized similar Appointments Clause challenges as nonjurisdictional.[8] In *Freytag v. C.I.R.*, 501 U.S. 868, 878 (1991), the taxpayer

---

[8] In *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), the Supreme Court noted that it recently had "endeavored . . . to 'bring some discipline' to the use of the term 'jurisdictional.'" (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). As the Court explained, the distinction is important because "[s]ubject matter jurisdiction can never be waived or forfeited." *Id.*

petitioners challenged the appointment of a Special Trial Judge on the United States Tax Court. The petitioners previously consented to the assignment of the judge. The Court stated that Appointments Clause challenges generally fall "in the category of *nonjurisdictional* structural constitutional objections that" a court may consider on appeal, even if the issue was not raised below. *Freytag*, 501 U.S. at 879 (emphasis added) (citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 535-36 (1962)). As such, although the petitioners had not previously raised the argument, and although nonjurisdictional arguments generally are waived if not raised before a lower court, the Court decided to exercise its discretion to hear that particular challenge.[9]

Underlying this decision is the premise that an Appointments Clause challenge is nonjurisdictional. *See also Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1189-90 (9th Cir. 2016) ("Our holding tracks the cases in which the Supreme Court has described Appointments Clause questions as 'nonjurisdictional,' even though they implicate core separation of powers principles."); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 756 (D.C. Cir. 2009) ("An Appointments Clause challenge is 'nonjurisdictional,' and thus not subject to the axiom that jurisdiction may not be waived." (quoting *Freytag*, 501 U.S. at 878)); *Nguyen v. United States*, 539 U.S. 69 (2003) (hearing a challenge to a decision rendered by a Court of Appeals panel convened that included a district judge from the Northern Mariana Islands, noting that petitioners had not previously objected to the panel's composition, but choosing to exercise the Court's "supervisory powers" to hear the challenge).

---

[9] The Supreme Court decided to hear the challenge because of the serious structural nature of the challenge raised, which went to the "validity of the Tax Court proceeding that" formed the basis of the litigation. *Freytag*, 501 U.S. at 879. As the Court explained, the Appointments Clause implicates the separation of powers. "[S]eparation-of-powers jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch." *Id.* at 878. The Appointments Clause serves to "guard[] against this encroachment" and to "prevent[] the diffusion of the appointment power." *Id.*

In summary, there are only two recognized exceptions to absolute judicial immunity, *Mireles*, 502 U.S. at 11-12, neither applies in this case. Further, the Supreme Court has directed that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356. Thus, the Federal Judge Defendants have absolute judicial immunity in this case against Stafne's claim for money damages.

### 4. Senior Status under 28 U.S.C. § 371 and the Appointments Clause

In this lawsuit, Stafne challenges the constitutional validity of § 371, which establishes the position of senior federal judge. Incorporating the arguments presented in the law review article by Judge Stras and Professor Scott, Stafne argues that the Federal Judge Defendants, having elected senior status, are no longer Article III judges. There is no dispute, however, that each of the Federal Judge Defendants was constitutionally nominated by the President and confirmed by the Senate when each first assumed his federal judicial office. Further, under the Constitution, each of the Federal Judge Defendants holds his federal judicial office until resignation, removal by impeachment, or death. *See* U.S. CONST., art. III, § 1 ("The judges, both of the supreme and inferior courts, shall hold their offices during good behavior . . . ."). None of the Federal Judge Defendants have resigned, been impeached and removed, or died. Instead, they simply elected senior status under 28 U.S.C. § 371(b)(1).

Under that statute, each federal judge electing senior status shall "retain the office" but may "retire from regular active service" and "continue to receive the salary of the office" if they meet the requirements established by Congress. Because a federal judge who elects senior status continues to "retain the office," that person, the Federal Judge Defendants argue, remains a federal judge under Article III. Indeed, as noted by Judge Stras and Professor Scott in their law review article:

> Both the verb and the definite article in the phrase "retain the
> office" suggest that senior judges retain the particular office they
> have always held. "Retain" implies continuity of ownership, and
> "the" implies continuity with respect to a particular office.
> Standing alone, this language suggests that senior judges do not
> change offices, but merely change status within the same office.

Stras & Scott, 92 CORNELL LAW REVIEW at 471-72 (footnotes omitted). As Judge Stras and

Professor Scott further explain:

> In 1948, Congress amended and consolidated several provisions
> relating to judicial retirement. The new statute, codified at 28
> U.S.C. § 371, provided that a judge "may retain his office but retire
> from regular active service." A revision note explained that those
> "[w]ords . . . were used to clarify the difference between
> resignation and retirement. Resignation results in loss of the
> judge's office, while retirement does not."

*Id*. at 477 (footnotes omitted). For the reasons given in their article, Judge Stras and

Professor Scott ultimately reject this reading of the text of § 371(b)(1). They do not, however,

rely upon any case law for their conclusion. The Court also has found no case law supporting the

conclusion urged by Judge Stras and Professor Scott.

The Court does not question the structural importance of the Appointments Clause of the

U.S. Constitution, which serves to protect separation of powers, a fundamental principle in our

constitutional structure. The Supreme Court has stated that "one who makes a timely challenge

to the constitutional validity of the appointment of an officer who adjudicates his case is entitled

to a decision on the merits of the question and whatever relief may be appropriate if a violation

indeed occurred." *Ryder v. United States*, 515 U.S. 177, 182-83 (1995). This discussion,

however, brings into clear focus the primary flaw underlying all of Stafne's claims, including his

argument under the Appointments Clause: this separately-filed lawsuit is not the proper time or

place for Stafne to raise his arguments relating to the senior status of the Federal Judge

Defendants. Further, as the Supreme Court also noted in *Ryder*, the remedy for an alleged

Appointments Clause violation is not to "subject public officials to personal damages." *Id*.

at 185.

At some point, the constitutionality of § 371 may need to be resolved. That may even

occur in the appeal of either *BNYM* or *Burnside*. For the reasons already discussed, however, this

separate action brought against the Federal Judge Defendants presents neither the proper place

nor the proper time to do so.

## B. Defendant Trenary's Motion to Dismiss

Stafne also seeks a contingent recovery against Defendant Trenary. Stafner argues that if,

in the future, Sheriff Trenary were to sell Stafne's real property pursuant to the judicial

foreclosure order issued by Judge Zilly in *BNYM*, then, Stafne asserts, Sheriff Trenary would be

liable to Stafne for damages. According to Stafne, it is improper for Sheriff Trenary to comply

with a court order that he knows or should know is invalid because it was issued by someone

who does not hold the authority of a federal judge under Article III. Sheriff Trenary moves to

dismiss on the ground that Stafne's claim against him is barred by quasi-judicial immunity.

Sheriff Trenary also argues that Stafne's claim against him is an improper collateral attack on

another court's order.

As discussed above, Stafne's challenge in this lawsuit to Judge Zilly's order judicially

foreclosing on Stafne's property constitutes an improper collateral attack. Furthermore, the very

reason why Stafne argues that Judge Zilly's order is void—*i.e.*, that Judge Zilly cannot

constitutionally exercise the power of a federal judge under Article III, already has been heard

and rejected in *that* case. A judgment in Stafne's favor on that point in this separate lawsuit

would require this Court to invalidate or enjoin the execution of an order issued by another

district judge, which, for all of the reasons previously discussed, is an action this Court is not

empowered to take. Finally, to the extent that Stafne seeks damages relating to any such

foreclosure and sale that has not yet occurred, Stafne's claim is not ripe. Not only has the judicial

foreclosure not yet been executed, the case is currently stayed until further order by Judge Zilly.

For all of these reasons, Stafne's claims against Sheriff Trenary are dismissed.

## CONCLUSION

The Court GRANTS both the motion to dismiss brought by the Federal Judge Defendants

(ECF 19) and the motion to dismiss brought by Sheriff Trenary (ECF 10). In addition, the Court

dismisses this lawsuit with prejudice.

**IT IS SO ORDERED**.

DATED this 9th day of October, 2018.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge